IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRIAN TRUE, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CV3280 |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF NEBRASKA, ROBERT HOUSTON, Director, Department of Correctional Services, An Agency of the State of Nebraska, DIANE SABATKA-RINE, Warden, Lincoln Correctional Center, ROBERT MADSEN, Deputy Warden, Lincoln Correctional Center, DARLENE PERCIVAL, Lincoln Correctional Center, | ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendants' amended motion for summary judgment (Filing No. 37). The court has reviewed the record and applicable law and finds that defendants' motion should be granted. The court dismisses all of the plaintiff's claims with prejudice.

**FACTUAL BACKGROUND**

The Nebraska Department of Correctional Services ("DCS") operates a prison facility known as the Lincoln Correctional Center ("LCC"), which employed the plaintiff, Brian True ("True"), from January 3, 1995, until June 28, 2007. Filing No. 28 at 2. In order to prevent contraband from entering its facilities and institutions, DCS periodically conducts random, unannounced searches of the vehicles parked in the lots DCS controls. Filing No. 28 at 2. Both the plaintiff and the defendants confirm that DCS "community custody inmates" have access to the parking lot that DCS periodically searches. Affidavit of Brian

True, Filing No. 42 ("True Aff.") at ¶ 8; Filing No. 38 at 9. DCS randomizes its searches of vehicles by randomly selecting five parking stalls from a diagram of the parking lot each time it conducts a suspicionless search. Filing No. 39, Ex. 17 at 1.

Employees at DCS are on notice that vehicles parked in DCS parking lots are subject to search. The DCS Employee Handbook states that "vehicles parked on state property are subject to search at any time." Filing No. 39, Ex. No. 1 at 15. The Employee Handbook further states that an employee's refusal "to submit to a search may constitute grounds for disciplinary action and/or suspension." Filing No. 39, Ex. No. 1 at 15.

On April 8, 2007, the Lincoln Journal Star published an article that included some statements True made in an interview with the newspaper. Filing No. 1 at ¶ 9. In the interview, True spoke out candidly about his concern that DCS's random, suspicionless searches of LCC employees' vehicles violated their constitutional right to be free from unreasonable searches and seizures. Filing No. 1 at ¶ 9.

On April 7, 2007, Captain Darlene Percival used a diagram of the LCC parking lot to randomly select five parking stalls to search during the third shift beginning on April 12, 2007. Filing No. 39, Ex. 7. On April 13, 2007, True parked his car in one of the five parking stalls Captain Percival had selected to search on April 7, 2007. Filing No. 1 at ¶ 9. True asserts that he had consistently parked his car in this same parking stall and that the employees of LCC knew this. Filing No. 45 at ¶ 9. In addition to the parking stall that True's car occupied, Captain Percival also randomly selected the parking stalls in which Lieutenant Francis, Sergeant Moore, and Officer Bennett had parked their vehicles. Filing No. 39, Ex. 6-7. The fifth stall selected was unoccupied and, consequently, DCS did not attempt to search a fifth vehicle. Filing No. 39, Ex. 7.

On April 13, 2007, at approximately 2:15 a.m., Sergeant Moore informed True that DCS had randomly selected his vehicle for a search. Filing No. 39, Ex. 5. Sergeant Moore instructed the plaintiff he would need to accompany him to the parking lot with his car keys. Filing No. 39, Exs. 5 & 8. True, however, refused to consent to the search of his vehicle. Filing No. 42, Ex. 1. Lieutenant Francis informed True that his refusal to consent to the search could result in disciplinary action. Filing No. 39, Exs. 5-6.

On May 31, 2007, DCS held a disciplinary hearing to determine whether there was just cause to discipline the plaintiff. Filing No. 39, Ex. 4 at 1. On June 6, 2007, Warden Diane Sabatka-Rine sent Director Robert Houston a letter recommending the termination of plaintiff's employment, citing the manifestation of True's intent to refuse to submit to random vehicle searches in violation of DCS policy as the reason for termination. Filing No. 39, Ex. 3. On June 18, 2007, Deputy Director Larry Wayne, on behalf of Director Robert Houston, approved the termination of True's employment. Filing No. 39, Ex. 3. On or about June 28, 2007, Warden Sabatka-Rine sent a letter informing the plaintiff that DCS was terminating his employment. Filing No. 1 at ¶ 10.

On December 27, 2007, the plaintiff filed his complaint, alleging an action under 42 U.S.C. § 1983 for violations of his constitutional rights under the First, Fourth, and Fourteenth Amendments. Filing No. 1. On September 24, 2008, the defendants filed an amended motion for summary judgment. Filing No. 37. The defendants request that this court dismiss all three of the plaintiff's causes of action.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109-1110 (8th Cir. 2006) (citing *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**DISCUSSION**

Upon review of the record and applicable law, the court grants the defendants' motion for summary judgment and dismisses all three of the plaintiff's claims for relief.

**1.   Plaintiff's First Claim for Relief**

In this first claim for relief, True asserts a civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourth Amendment.  Filing No. 30 at ¶ 13.  True alleges the defendants violated his rights when they demanded that he submit to a suspicionless, warrantless search of his personal vehicle.  The plaintiff's first claim for relief does not survive the defendants' summary judgment motion, however, because the governmental action in this case–DCS's demand for a random search of the plaintiff's personal vehicle–does not constitute an unreasonable search or seizure under the Fourth Amendment.

The purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967).  Its protections, however, are not limitless.  See *Bell v. Wolfish*, 441 U.S. 520, 558 (1979) ("The Fourth Amendment prohibits only *unreasonable* searches.") (emphasis added).  Thus, "[i]n each case [this constitutional analysis] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

Correction officers employed at a detention facility have a lower reasonable expectation of privacy when they are at their place of work.  This is because "[a] detention

facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Id.* To prevent the introduction of contraband into the prison, prison officials must have the ability "to intercept and exclude by all reasonable means all contraband smuggled into the facility." *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir.1982). "While correction officers retain certain expectations of privacy, it is clear that, based upon their place of employment, their subjective expectations of privacy are diminished while they are within the confines of the prison." *McDonell v. Hunter*, 809 F.2d 1302, 1306 (8th Cir. 1987). Furthermore, "[c]ases involving vehicle searches have recognized that an individual's expectation of privacy in his vehicle is less than in other property." *Id.* at 1309. Although True does not shed all expectations of privacy in his vehicle when he parks it within the confines of DCS, his reasonable expectation of privacy in his personal vehicle is lower when it is on DCS property.

The Eighth Circuit Court has considered this lowered expectation of privacy and has concluded that "it is not unreasonable to search vehicles that are parked within [a correctional] institution's confines where they are accessible to inmates." *Id.* In this case, both parties confirm that DCS "community custody inmates" have access to the parking lot that DCS periodically searches. True Aff. at ¶ 8; Filing No. 38 at 9. The Eighth Circuit found that "[s]uch searches may be conducted without cause but must be done uniformly or by systematic random selection of employees whose vehicles are to be searched." *McDonell*, 809 F.2d at 1309. The record in this case demonstrates that DCS randomizes its searches of vehicles by randomly selecting five parking stalls from a diagram of the parking lot each time it conducts a suspicionless search. Filing No. 39, Ex. 17 at 1.

6

Given True's diminished expectation privacy and the government's justification for its search, DCS's demand that True submit to a suspicionless search of his personal vehicle parked on DCS property did not violate True's Fourth Amendment rights. As a result, the court grants the defendants' motion for summary judgment and dismisses the plaintiff's first claim for relief.

### 2. Plaintiff's Second Claim for Relief

In his second claim for relief, True alleges the defendants discriminated against him and denied him his right to equal protection under the Fourteenth Amendment. Filing No. 30 at ¶ 15. The plaintiff contends that DCS's policy discriminates against him and his fellow employees because DCS searches employee-owned vehicles *only*. DCS does not search vehicles owned by the general public, and to the plaintiff, this constitutes an act of impermissible class-based discrimination. True's second claim for relief does not survive the defendants' motion for summary judgment, however, because it is clear from the record that DCS's randomized search policy is rationally related to a legitimate state interest. DCS's random search policy survives the scrutiny of the Fourteenth Amendment.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440. In contrast, classifications based on a "suspect class," such as "race, alienage, or national origin[,] . . . are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Id.*

7

Employees at state correctional facilities do not constitute a "suspect class" for purposes of the Supreme Court's Fourteenth Amendment jurisprudence, and the plaintiff makes no argument in this case for the definition of "government employees" as a new suspect class. Consequently, this court will only inquire whether the State's use of a classification is rationally related to a legitimate state interest. *See Executive Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562 (8th Cir. 2008) ("Where no suspect classification is involved, however, the State need only show that the differential treatment is rationally related to a legitimate state interest."). It is, therefore, the plaintiff's burden to establish that "there was no rational basis for the differential treatment." *Id.*

It is clear that the State's use of a randomized, suspicionless search of only employee-owned vehicles at DCS is rationally related to a legitimate state interest. DCS, as a correctional institution, has a legitimate state interest to "safeguard institutional security" and ensure that contraband does not enter its facility. *McDonell*, 809 F.2d at 1306. Furthermore, the State has a rational basis in its decision to search only the vehicles of its employees. The Eighth Circuit Court of Appeals has held that employees of a correctional facility, "based upon their place of employment," have diminished subjective expectations of privacy "while they are within the confines of the prison." *McDonell* at 1306. *McDonell* reasoned that "society is prepared to accept this expectation of privacy as reasonable although diminished in light of the difficult burdens of maintaining safety, order and security that our society imposes on those who staff our prisons." *Id.* (internal quotations omitted). DCS employees' lowered expectations of privacy provide the State with a rational basis for searching employee-owned vehicles only. The State is justified in its decision not to randomly search the vehicles owned by the general public, as members

of the general public do not share the same diminished expectation of privacy when they park their car in a DCS lot.

The plaintiff's second claim for relief, therefore, does not survive the defendants' motion for summary judgment because the plaintiff has failed to demonstrate that the State had no rational basis for its differential treatment of DCS employees and non-employees. Accordingly, the court dismisses the plaintiff's second claim for relief.

### 3. Plaintiff's Third Claim for Relief

In his final claim for relief, True contends that DCS's demand that he submit to a suspicionless search of his car violated his constitutional rights under the First Amendment. Filing No. 30 at ¶ 17. It is undisputed that on April 8, 2007, the Lincoln Journal Star published an article that included some of True's statements expressing an opinion that DCS's random, suspicionless searches of LCC employees' vehicles violated their constitutional right to be free from unreasonable searches and seizures. Filing No. 1 at ¶ 9. This factual assertion alone, however, is not sufficient to establish a cause of action. True's First Amendment claim fails because there is no evidence in the record to demonstrate that his speech published in the Lincoln Star was *a motivating factor* in DCS's decision to terminate his employment. See *Bailey v. Dept. of Elementary and Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006) (requiring the plaintiff to establish that "his speech was a motivating factor in the action taken against him" to succeed on his First Amendment retaliation claim).

Public employees do not lose all of their constitutional rights as a result of their employment. See *Connick v. Myers*, 461 U.S. 138, 142 (1983) ("[A] State cannot condition public employment on a basis that infringes the employee's constitutionally protected

9

interest in freedom of expression."). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). This constitutional protection, however, is not limitless. "To succeed on a First Amendment retaliation claim, a public employee plaintiff must show: (1) he engaged in protected speech, that is, speech on a matter of public concern; (2) his interest as a citizen in commenting on the issue outweighs the public employer's interest in promoting efficient public service; and (3) his speech was a motivating factor in the action taken against him." *Bailey*, 451 F.3d at 518.

While there can be no question that True's speech in the Lincoln Star addressed a matter of public concern, his claim fails because he has not put forth any evidence to demonstrate that his speech motivated DCS to terminate his employment. Instead, the evidence in the record shows that DCS requires all of its employees to submit to random, suspicionless searches of vehicles parked in DCS lots, and employees are informed that their failure to submit to these searches could result in disciplinary action. Filing No. 39, Ex. No. 1 at 15. The evidence further demonstrates that DCS terminated True's employment because on April 13, 2007, he refused to submit to a random search of his vehicle parked in a DCS parking lot. *See* Filing No. 39, Ex. 3. The plaintiff has provided no evidence to support the contention that DCS terminated his employment because of his published statements in the Lincoln Star.[1]

---

[1] This court also cannot conclude that True's speech in the Lincoln Star was a motivating factor in DCS's decision to search his vehicle since Captain Darlene Percival randomly selected the parking stalls to be searched on April 7, 2007, *prior* to the publication of the newspaper article. Filing No. 39, Ex. 7. The Lincoln Star did not publish the article with True's statements until April 8, 2007. Filing No. 30 at ¶ 9. Furthermore, as this court has determined that the State has a legitimate interest in randomly searching

Because True has not shown that "his speech was a motivating factor in the action taken against him," his First Amendment claim does not survive the defendants' motion for summary judgment. *Bailey*, 451 F.3d at 518. The court, therefore, dismisses his third claim for relief.

## CONCLUSION

For the aforementioned reasons, the court dismisses all three of plaintiff's claims for relief. Accordingly,

IT IS ORDERED:

1. The defendants' amended motion for summary judgment (Filing No. 37) is granted.

2. The plaintiff's claims for relief are dismissed with prejudice.

3. A separate judgment is entered in conjunction with this Memorandum and Order.

DATED this 4th day of March, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

vehicles in the DCS parking lot, the court consequently concludes that DCS's search of plaintiff's vehicle would not constitute "action take against him" for the purposes of satisfying the elements found in *Bailey v. Dept. of Elementary and Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006). It is notable that nowhere in his brief in opposition to defendants' motion for summary judgment (Filing No. 45) does the plaintiff dispute the defendants' factual assertion that Captain Percival randomly selected the parking stalls on April 7, 2007. Consequently, defendants' assertions regarding Captain Percival's selection of the parking stalls is deemed admitted. *See* NECivR 56.1(b)(1) ("Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.").